NOT FOR PUBLICATION                                      (Doc. No. 49)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                            :
Cheri LANE, as Administratrix Ad            :
Prosequendum for the heirs-at-law of        :        Civil No. 11-5584 (RBK/JS)
Albert LANE, III, deceased, and as          :
General Administratrix of the Estate of     :        **OPINION**
Albert LANE, III, and individually, and     :
Derrick LANE,                               :
                                            :
                        Plaintiffs,         :
                                            :
            v.                              :
                                            :
THE CITY OF CAMDEN, et al.,                 :
                                            :
                        Defendants.         :
_____     :

**KUGLER**, United States District Judge:

  Cheri Lane, individually and on behalf of Albert Lane III's estate, and Derrick Lane

("Plaintiffs") bring federal and state claims against the City of Camden ("the City") and Sergeant

Zsakheim James, Sergeant Paul Price, Officer George Reese, Officer Stephen Baker, Officer

Patric Cooper, Officer Merari Pimental, and Officer Fernando Badillo ("Defendants"). Plaintiffs

also bring federal and state law claims against fictitious defendants John Does VII-X, Jane Roes

II-X, and ABC Corp. I-X. This action comes before the Court on Defendants' Motion for

Summary Judgment (Doc. No. 49), pursuant to Federal Rule of Civil Procedure 56. For the

following reasons, Defendants' motion is **GRANTED IN PART**, Plaintiffs' state law claims are

**DISMISSED**, and the remaining fictitious defendants are **DISMISSED**.

## I.     FACTUAL BACKGROUND

The facts, in the light most favorable to the Plaintiffs, are as follows: On January 4, 2011, Albert Lane III ("Decedent"), a diagnosed paranoid schizophrenic, went into the kitchen and grabbed a knife. Plaintiffs' Counterstatement of Undisputed Material Facts ("Counterstatement") ¶ 13. Decedent was 5'9" tall and weighed 260 pounds. Motion, Ex. 67 (autopsy report). The knife measured approximately twelve and one-half inches (12 ½'') in total length, with the blade measuring approximately eight inches (8"). Motion, Ex. 79 at 5 (Report of Camden County Prosecutor's Officer Investigator William Rummell).

Decedent placed the knife on the kitchen counter when Cheri Lane, his mother, told him to do so. Counterstatement ¶ 13. He retrieved the knife and went upstairs to his bedroom. *Id.* ¶ 14. Decedent was "nonresponsive" when Ms. Lane and Derrick Lane, his brother, attempted to get him to put the knife down. *Id.* ¶¶ 14, 16. At 5:17 p.m., Ms. Lane called 911. *Id.* ¶ 17.

Emergency medical services were dispatched to their residence. *Id.* ¶ 21. Officer Badillo was the first Camden Police Department officer to arrive, followed by Officer Pimentel, Officer Cooper, and Officer Baker. *Id.* ¶¶ 25–26. Sergeant James overheard the call over the radio, and instructed the responding officers not to enter the residence until he arrived. *Id.* ¶ 29–30. Sergeant Price accompanied Sergeant James. *Id.* ¶ 31. Sergeant James and Sergeant Price were on location by 5:41 p.m. Motion, Ex. 68 (CAD Ticket Event). Sergeant James walked upstairs and told Ms. Lane to come out of the room. Counterstatement ¶ 35. Decedent "nodded his head affirmatively" when Sergeant James asked him if he wanted help. *Id.* ¶ 36.

Ms. Lane and Derrick Lane went downstairs at Sergeant James's request. *Id.* ¶ 37. Sergeant James then went back downstairs to question Ms. Lane. *Id.* ¶ 38. Ms. Lane told him that Decedent was upstairs with a knife, and that the officers should "grab a good grip on his hand

because he can get out of it." *Id.* Sergeant James and Sergeant Price went back upstairs. *Id.* ¶ 40. Sergeant James attempted to negotiate with Decedent, but he was "non-responsive." *Id.* ¶¶ 41, 43.

Sergeant James went back downstairs and instructed Ms. Lane and Derrick Lane to leave the residence, and they did so. *Id.* ¶ 44, 45. At this point, Officer Reese arrived. *Id.* ¶ 46. He had a ballistics shield and a "long gun,"[1] which he retrieved from his vehicle. *Id.* Sergeant Price took the ballistics shield and stood on the top of the stairs, in the "narrow, confined hallway." *Id.* ¶ 50. Sergeant James stood behind Sergeant Price, and Officer Reese stood behind Sergeant James with the long gun to provide cover. *Id.* Officer Baker stood midway up the stairs. *Id.*

Decedent sat up in bed and looked at Sergeant James. *Id.* ¶ 69. Decedent was still "nonresponsive" when Sergeant James continued to speak to him, and he "laid himself back down." *Id.* Decedent then stood up and "walked deeper into the bedroom, with the knife positioned by his side." *Id.* ¶ 71. Sergeant James "momentarily" lost sight of Decedent. *Id.* ¶ 72.

Decedent then walked back into Sergeant James's line of sight. *Id.* ¶ 73. He took "little" steps in the direction of Sergeant James, Sergeant Price, and Officer Reese. *Id.* ¶ 76.[2] Decedent had his left shoulder "cocked" towards Sergeant James, Sergeant Price, and Officer Reese. Motion, Ex. 31 at 240:4–12 (Sworn Deposition of Sergeant Price). Decedent "had the knife down and was going lower with the knife." *Id.* at 240:15–17. Decedent was at about the doorway to the bedroom, and Sergeant Price was two or three feet from the doorway. *Id.* at 241:24–25, 253:25, 254:1–2. Decedent looked at the knife and then at Sergeant James, Sergeant Price, and

---

[1] The "long gun" was "a high-powered M-4 assault rifle or machine gun." Counterstatement ¶ 46.
[2] As Plaintiffs cite to Sergeant Price's deposition testimony, Motion, Ex. 31, and do not offer any contrary evidence, this Court will rely upon Sergeant Price's deposition testimony to describe the events that occurred while Ms. Lane and Derrick Lane were outside.

Officer Reese. *Id*. Sergeant James told Decedent to "[s]top it." *Id*. at 254:2–3. Decedent "just full out lunged with the knife." *Id*. at 254:3–6. Decedent "was basically out of the doorway . . . he was coming out of the doorway and coming at [Sergeant James, Sergeant Price, and Officer Reese] quickly." *Id*. at 254:21–23. When Decedent was "right at the doorway or just inside of the doorway," with the knife "at waist level" pointed at Sergeant James, Sergeant Price, and Officer Reese, Sergeant Price fired his service weapon. *Id*. at 254:24–25, 255:1–5. Sergeant Price heard Officer Reese discharge his weapon "almost simultaneously." *Id*. at 256:11–18. Sergeant Price and Officer Reese "fired their service weapons at Decedent twelve times, shooting him ten times, including once in the head." Counterstatement ¶ 79.

It is unclear from the record how long Sergeant James negotiated with Decedent before Sergeant Price and Officer Reese discharged their weapons.[3] Upon being shot, Decedent "fell to the ground" and Sergeant James handcuffed him. *Id.* ¶ 80. Sergeant James called for emergency medical services personnel to attend to Decedent's injuries. *Id.* ¶ 81. The emergency medical services personnel transported Decedent to an ambulance, where they conducted chest compressions and then transported him to a hospital. *Id.* ¶ 93. He was pronounced dead at 6:10 p.m. *Id.* ¶ 94.

---

[3] This Court intends to adopt Plaintiffs' version of the facts. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, Plaintiffs do not have *any* evidence to support their allegation that "[w]ithin seconds of exiting their home, Derrick Lane and Ms. Lane heard gunshots from inside the home." *See* Counterstatement ¶ 49. Plaintiffs cite to Ms. Lane and Derrick Lane's deposition testimonies, but Ms. Lane's deposition testimony directly contradicts this allegation. Ms. Lane testified that she went outside onto the porch, spoke to a female EMT, and then "[a]fter maybe a couple of minutes" a male EMT told her to move back. Motion, Ex. 65 at 106–108. She then testified that "[m]aybe a few seconds to a minute later," she looked through the window and observed silhouettes moving. *Id.* at 108–09. She testified that "the next thing I knew, I heard a couple of shots." *Id.* at 109:1–6. Derrick Lane did not testify to the amount of time between his exiting the residence and hearing gunshots. *See* Motion, Ex. 66 at 36–38.

Ms. Lane and Derrick Lane attempted to re-enter the residence after they "heard gunshots from inside the home." *Id.* ¶¶ 49, 82–83. Ms. Lane and Derrick Lane started "banging on the door." Motion, Ex. 65 at 109:23–24 (Sworn Deposition of Ms. Lane). Ms. Lane tried to "break in the window," and both Ms. Lane and Derrick Lane tried to "break the door down." *Id.* at 110:11–14. Officer Baker instructed Plaintiffs that they could not enter the residence. Counterstatement ¶ 83. Derrick Lane "snapped the lock" and officers "on the other side [were] trying to hold it shut." Motion, Ex. 66 at 39:1–5 (Sworn Deposition of Derrick Lane).

Ms. Lane "just went forward" and "blacked out." Motion, Ex. 65 at 110:17-18. She fought with officers on the porch.[4] *Id.* at 110:18–25. The officers "were trying to grab" Ms. Lane, and she "was trying to trip them." *Id.* at 111:1–8. The officers "got [Ms. Lane] down," and "handcuffed [her] and put [her] in the back of the police car." *Id.* at 111:13–14. She was taken to the police station, but no charges were filed against her. Counterstatement ¶ 90. Ms. Lane testified that she had "bruising" from being arrested, and that she did not visit a doctor for treatment. Motion, Ex. 65 at 119:2–6.

As this was happening, Derrick Lane was "trying to get inside the house" despite an officer "trying to take [him] down." Motion, Ex. 66 at 41:3–25. Derrick Lane was "resisting" but eventually Officer Cooper and Officer Baker "took [him] down on [his] stomach" and handcuffed him. *Id*. No charges were filed against Derrick Lane. Counterstatement ¶ 88. Derrick Lane testified that he "scuffed [his] knee when [Officer Cooper and Officer Baker] took [him]

---

[4] Ms. Lane's testimony is that she fought with "[a]ll" of the officers. Motion, Ex. 65 at 110:23. Given that Sergeant James, Sergeant Price, and Officer Reese were upstairs with Decedent, this Court will assume that "[a]ll" refers to Officer Baker, Officer Cooper, Officer Pimental, and Officer Badillo.

down." Motion, Ex. 66 at 50:24–25. His knee healed, and he did not suffer any other injuries as a result of his arrest. *Id.* at 51:1–7.

## II.    STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Id.* at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. Furthermore, the nonmoving may not simply allege facts, but instead must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    DISCUSSION

Plaintiffs bring claims against Sergeant James, Sergeant Price, Officer Reese, Officer Baker, Officer Cooper, Officer Pimental, and Officer Badillo under 42 U.S.C. § 1983,[5] alleging that Defendants falsely arrested Ms. Lane and Derrick Lane, falsely imprisoned Ms. Lane and Derrick Lane, used excessive force against Ms. Lane, Derrick Lane, and Decedent, and failed to intervene to prevent constitutional violations by their fellow officers. Plaintiffs also bring claims against the officers under 42 U.S.C. § 1985 and New Jersey state law. Plaintiffs allege that Sergeant James and Officer Baker violated Section 1983 by negligently supervising the other Defendants. Plaintiffs also bring claims against the City under Section 1983.

### A. Qualified Immunity

Sergeant James, Sergeant Price, Officer Reese, Officer Baker, Officer Cooper, Officer Pimental, and Officer Badillo move for summary judgment on the basis of qualified immunity. Qualified immunity protects government officials from civil liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is "an immunity from suit rather than a mere defense to liability" so it is "effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511 (1985)).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011). Police officers are entitled to qualified immunity unless (1) the plaintiff has shown facts that make out a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the alleged

---

[5] Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

misconduct. *Pearson*, 555 U.S. at 232. The court has discretion to decide which element to decide first. *Id*. at 236.

Qualified immunity is a question of law, but disputed issues of material fact will preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325 (3d Cir. 2009). The court should usually adopt the plaintiff's version of the facts. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380. For the reasons set forth below, Sergeant James, Sergeant Price, Officer Reese, Officer Baker, Officer Cooper, Officer Pimental, and Officer Badillo are entitled to qualified immunity. As such, the Court grants summary judgment for Defendants as to Plaintiffs' Section 1983 claims.

### 1. False Arrest

An arrest without probable cause is a Fourth Amendment violation actionable under Section 1983. *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978). To succeed on a false arrest claim, a plaintiff must show: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). In this case, there is no dispute that Officer Baker, Officer Cooper, Officer Pimental, and Officer Badillo arrested Ms. Lane and Derrick Lane. Regarding the second element, the inquiry "is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).

Probable cause "is a factual analysis from which the officers on the scene must make an immediate determination." *La v. Hayducka*, 269 F.Supp.2d 566, 576 (D.N.J. 2003). Probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). When a police officer tells a person not to enter a building for a legitimate law enforcement reason, such as "to avoid impeding a rescue team, or to protect a crime scene, or to secure an area for the protection of a public official," the police officer has probable cause to arrest that person if they disobey. *City of Chicago v. Morales*, 527 U.S. 41, 69 (1999) (Kennedy, J., concurring in part and concurring in the judgment) ("[S]ome police commands will subject a citizen to prosecution for disobeying whether or not the citizen knows why the order is given.").

According to Plaintiffs' version of the facts, Ms. Lane and Derrick Lane disobeyed Officer Baker's instruction that they could not re-enter the residence. Both Plaintiffs tried to break down the door, and Ms. Lane tried to break in a window. Furthermore, when the officers attempted to keep Ms. Lane and Derrick Lane from entering the residence, Ms. Lane fought with Officer Baker, Officer Cooper, Officer Pimental, and Officer Badillo, and Derrick Lane fought with Officer Baker and Officer Cooper. Given these facts, the officers had probable cause to arrest Ms. Lane and Derrick Lane.[6] Thus, the officers did not violate Ms. Lane and Derrick Lane's constitutional rights by making the arrests, and Officer Baker, Officer Cooper, Officer

---

[6] It is irrelevant that Ms. Lane and Derrick Lane were not subsequently charged with any offense. The only relevant inquiry is whether the officers had probable cause *at the time of the arrest*. Given the tragic circumstances, declining to prosecute Ms. Lane and Derrick Lane was an appropriate exercise of discretion.

Pimental, and Officer Badillo are entitled to qualified immunity.[7] The Court grants summary judgment for Defendants on Plaintiffs' Section 1983 false arrest claims.

### 2. False Imprisonment

If there is a false arrest, "the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). But an arrest based on probable cause cannot be the basis for a false imprisonment claim. *Id.* Officer Baker, Officer Cooper, Officer Pimental, and Officer Badillo had probable cause to arrest Ms. Lane and Derrick Lane, so the subsequent detention of Plaintiffs did not violate their constitutional rights. Officer Baker, Officer Cooper, Officer Pimental, and Officer Badillo are entitled to qualified immunity.[8] The Court grants summary judgment for Defendants on Plaintiffs' Section 1983 false imprisonment claims.

### 3. Excessive Force

The Fourth Amendment prohibits police officers from using excessive force to arrest a suspect. *See Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999). To prove a Fourth Amendment excessive force claim, a plaintiff must demonstrate that (1) a seizure occurred and (2) the seizure was unreasonable. *See id.* To determine whether the seizure was reasonable, the Court must apply the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Third Circuit held that the Court must:

---

[7] Plaintiffs do not clearly state which claims are being brought against which Defendants. Sergeant James, Sergeant Price, and Officer Reese were not present for the arrests of Ms. Lane and Derrick Lane. If Plaintiffs are asserting Section 1983 false arrests claims against Sergeant James, Sergeant Price, and Officer Reese, they too are entitled to qualified immunity.
[8] To the extent Plaintiffs assert Section 1983 false imprisonment claims against Sergeant James, Sergeant Price, and Officer Reese, they are also entitled to qualified immunity.

> determine the objective reasonableness of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, . . . whether he is actively resisting arrest or attempting to evade arrest by flight[,] . . . the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006). On a motion for summary judgment, once the Court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*," the reasonableness of a police officer's actions "is a pure question of law." *Scott*, 550 U.S. at 381 n.8; *see also Giles*, 571 F.3d at 325. If "a reasonable officer could have believed that his conduct was justified," the police officer is entitled to qualified immunity. *San Francisco v. Sheehan*, 135 S.Ct. 1765, 1777 (2015).

### a. Ms. Lane

There is no dispute that Ms. Lane was seized. Therefore, this Court need only determine whether the officers' use of force against Ms. Lane was objectively reasonable. According to Ms. Lane's deposition testimony, she attempted to re-enter the residence after she heard gunshots. She tried to break down the door and break in the window. In Ms. Lane's own words, she "just went forward" and "blacked out." She testified that she fought with "[a]ll" the officers on the porch.[9] Ms. Lane tried to trip the officers. In response, the officers "got [her] down," handcuffed her, and put her in the back of the police car. Ms. Lane was bruised as a result of being arrested. She did not testify that any officer used a weapon in making her arrest or continued to use force against her after her arrest.

---

[9] Again, this Court will assume that "[a]ll" refers to Officer Baker, Officer Cooper, Officer Pimental, and Officer Badillo.

Ms. Lane's reaction to hearing gunshots inside her home is understandable. However, given that Ms. Lane was trying to break down the door and break in the window of an active law enforcement scene, and that she fought with the officers and actively resisted arrest, this Court finds that the officers' actions were objectively reasonable. The officers used physical force only in response to Ms. Lane's use of physical force, and the officers' use of physical force ceased upon Ms. Lane's arrest. A reasonable officer in their position would have believed his conduct was justified. Therefore, Officer Baker, Officer Cooper, Officer Pimental, and Officer Badillo are entitled to qualified immunity on Ms. Lane's Section 1983 claim for excessive force.[10]

### b. Derrick Lane

There is no dispute that Derrick Lane was seized. Therefore, this Court need only determine whether Officer Cooper and Officer Baker's use of force against Derrick Lane was objectively reasonable. According to Derrick Lane's deposition testimony, he also attempted to re-enter the residence after he heard gunshots. He tried to break down the door and "snapped the lock" on the door. Derrick Lane continued to try to enter the house, despite the officers trying to hold the door shut. Derrick Lane was "resisting" but eventually Officer Cooper and Officer Baker "took [him] down on [his] stomach" and handcuffed him. He "scuffed" his knee when Officer Cooper and Officer Baker arrested him, but he did not suffer any other injuries and his knee healed. Derrick Lane did not testify that any officer used a weapon in making his arrest or continued to use force against him after him arrest.

Derrick Lane's actions after he heard the gunshots are understandable. But given that Derrick Lane was trying to break down the door and enter an active law enforcement scene, and

---

[10] If Ms. Lane is asserting Section 1983 excessive force claims against Sergeant James, Sergeant Price, and Officer Reese, they too are entitled to qualified immunity.

that he resisted arrest, this Court finds that Officer Cooper and Officer Baker's actions were objectively reasonable. They applied reasonable physical force in response to Derrick Lane's use of physical force, and they ceased their use of force upon Derrick Lane's arrest. A reasonable officer in their position would have believed his conduct was justified. Therefore, Officer Cooper and Officer Baker are entitled to qualified immunity on Derrick Lane's Section 1983 claim for excessive force.[11]

### c. Decedent Albert Lane III

"[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). A court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Furthermore, a court must allow "for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Id.* at 397; *see also Brown v. United States,* 256 U.S. 335, 343 (1921) (Holmes, J.) ("Detached reflection cannot be demanded in the presence of an uplifted knife.").

The Third Circuit has instructed courts to be "cautious" on summary judgment where the person subject to deadly force is deceased and thus cannot testify. *Abraham*, 183 F.3d at 294. This caution means the court "may not simply accept what may be a selfserving account by the officer." *Id.* Instead, the court must also examine circumstantial evidence, and determine whether such evidence "could convince a rational fact finder that the officer acted unreasonably." *Id.* But

---

[11] If Derrick Lane is asserting Section 1983 excessive force claims against the other officers, they are also entitled to qualified immunity.

the standard for summary judgment is not higher for deadly force cases. *See Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011). The non-moving party must still "present *affirmative* evidence – whether direct or circumstantial – to defeat summary judgment, and may not rely simply on the assertion that a reasonable jury could discredit the opponent's account." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003).

 Furthermore, a plaintiff cannot defeat summary judgment "by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless." *Id*. If the case is close, "a jury does not automatically get to second-guess these life and death decisions, even though the plaintiff has an expert and a plausible claim that the situation could better have been handled differently." *Saucier v. Katz*, 533 U.S. 194, 216 n.6 (2001) (Ginsburg, J., concurring in the judgment). Furthermore, if deadly force is justified under the Constitution, a police officer does not have a constitutional duty to use non-deadly alternatives first. *Plakas v. Drinski*, 19 F.3d 1143, 1148 (7th Cir. 1994). The only constitutional duty is to act reasonably under the Fourth Amendment. *See Illinois v. Lafayette,* 462 U.S. 640, 647–48 (1983).

 Decedent was 5'9" tall and weighed 260 pounds. He was a diagnosed paranoid schizophrenic, and Plaintiffs do not dispute that he was in possession of a knife with an 8-inch blade. To oppose summary judgment, Plaintiffs provide the conclusory assertion that Decedent "was not an immediate threat." Pl. Opp. Br. at 12. But Plaintiffs provide no affirmative evidence, either direct or circumstantial, to contradict Sergeant Price's testimony that Decedent advanced on Sergeant James, Sergeant Price, and Officer Reese with the knife. In fact, Plaintiffs rely on part of Sergeant Price's testimony to support their Counterstatement of Material Facts. *See* Counterstatement ¶ 76. Plaintiffs' expert, Richard Rivera, agreed that he did not "have any

information at all that indicates that Mr. Lane d[id] not raise the knife as he crosse[d] the

doorway." Def. Reply Br., Ex. 4 at 86:23–25, 87:1 (Sworn Deposition of Richard Rivera). He

also agreed that he did not "have any information that Mr. Lane [wa]s doing anything other than

crossing the door threshold between his bedroom and the hallway in the direction of the three

officers." *Id.* at 87:2–7.

  In the absence of *any* affirmative evidence presented by the Plaintiffs, this Court must

conclude that there is no genuine dispute that Decedent advanced upon Sergeant James, Sergeant

Price, and Officer Reese with a knife, as Sergeant Price described in his deposition. As such,

whether Sergeant Price and Officer Reese acted reasonably in using deadly force against

Decedent is a question of law to be resolved by this Court. *See Scott*, 550 U.S. at 381 n.8 (the

reasonableness of a police officer's actions "is a pure question of law" once the Court has

"determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to*

*the extent supportable by the record*").

  If a "reasonable officer on the scene" would have used deadly force, then Defendants are

entitled to qualified immunity. Decedent advanced upon Sergeant James, Sergeant Price, and

Officer Reese with a knife with an 8-inch blade. Sergeant James, Sergeant Price, and Officer

Reese were in a narrow hallway at the top of the stairs. Sergeant Price was two or three feet from

the doorway of the bedroom, and Decedent "lunged" at them with a large knife, coming through

the doorway quickly. Sergeant Price and Officer Reese discharged their service weapons because

Decedent "pose[d] an immediate threat to the safety of officers." *Graham*, 490 U.S. at 396.

Sergeant Price testified that he and Officer Reese fired almost simultaneously, and there is no

evidence that Sergeant Price and Officer Reese continued firing after Decedent was subdued.

Plaintiffs assert that Sergeant James, Sergeant Price, and Officer Reese "should have waited for more competent personnel." Pl. Opp. Br. at 13. But Plaintiffs do not point to any evidence in the record that suggests that Sergeant James, Sergeant Price, and Officer Reese were not competent. Furthermore, "it is reasonable for police to move quickly if delay 'would gravely endanger their lives or the lives of others.'" *Sheehan*, 135 S.Ct. at 1775 (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 298-99 (1967)). Sergeant James was trying to convince Decedent to put the knife down. Decedent advanced upon Sergeant James, Sergeant Price, and Officer Reese quickly, lunging at them with a large knife. Given the facts and circumstances, Decedent was a danger to the officers, and it was not unreasonable for Sergeant Price and Officer Reese to discharge their weapons instead of trying to retreat down the stairs.

Plaintiffs assert in the alternative that Sergeant Price and Officer Reese should have "subdued [Decedent] with non-lethal or less-than-lethal force." Pl. Opp. Br. at 13. Although this assertion is understandable, police officers do not have a constitutional duty to use non-lethal or less-than-lethal force when faced with deadly force. *Plakas*, 19 F.3d at 1148. Their constitutional duty is only to act with reasonable force given the circumstances. *Id*. Sergeant Price and Officer Reese discharged their weapons only after Decedent lunged at them with an 8-inch blade. Faced with deadly force, they reasonably responded with deadly force.[12] Furthermore, Sergeant Price

---

[12] Plaintiffs also assert that Defendants "were not trained on or equipped with electronic stun guns." Pl. Opp. Br. at 13. But "there is . . . not a single precedent which holds that a governmental unit has a constitutional duty to supply particular forms of equipment to police officers." *Plakas*, 19 F.3d at 1151; *see also Carswell v. Borough of Homestead*, 381 F.3d 235, 245 (3d Cir. 2004) (the Third Circuit has "never recognized municipal liability for a constitutional violation because of failure to equip police officers with non-lethal weapons."). This Court agrees that it is not "wise policy to permit every jury in these cases to hear expert testimony that an arrestee would have been uninjured if only the police had been able to use disabling gas or a capture net or a taser (or even a larger number of police officers)." *Plakas*, 19 F.3d at 1151. "[T]he Constitution does not enact a police administrator's equipment list." *Id.* Furthermore, even if this Court was willing to impose a constitutionally-required equipment list

and Officer Reese ceased their use of deadly force once Decedent was no longer an imminent threat.

Albert Lane III's death was a tragedy. This Court has the deepest sympathy for Ms. Lane, who lost a son, and Derrick Lane, who lost a brother. However, Sergeant Price and Officer Reese acted reasonably in defending themselves and Sergeant James. They resorted to deadly force only when they were assaulted with deadly force. Unfortunately, their use of force resulted in the death of Albert Lane III. But given the facts and circumstances, Sergeant Price and Officer Reese used a reasonable and lawful amount of force. They are therefore entitled to qualified immunity.[13] The Court grants summary judgment for Sergeant Price and Officer Reese on Plaintiffs' Section 1983 claims for excessive force.

### 4. Failure to Intervene

Police officers have a duty to take "reasonable steps" to prevent other officers from violating constitutional rights. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). As the Court finds that no officer violated any constitutional right of Ms. Lane, Derrick Lane, or Decedent, there is no basis for a failure to intervene claim. As such, the Court grants summary judgment for Defendants on Plaintiffs' Section 1983 failure to intervene claims.

### 5. Negligent Supervision

No officer violated any constitutional right of Decedent, Ms. Lane, or Derrick Lane. As such, there is no basis for a negligent supervision claim against Sergeant James or Officer Baker.

---

upon municipal police departments, Plaintiffs' expert Richard Rivera admits that the Attorney General's policy on stun guns had not been implemented anywhere in New Jersey as of January 2011. *See* Reply Br., Ex. 4 at 112:1–25.

[13] Sergeant James did not use any force against Decedent, and the other officers were not present. To the extent Plaintiffs are attempting to bring this claim against Sergeant James or the other officers, they too are entitled to qualified immunity.

The Court grants summary judgment for Sergeant James and Officer Baker on Plaintiffs' Section 1983 negligent supervision claims.

### B. 42 U.S.C. § 1985(3)

42 U.S.C. § 1985 consists of three subsections dealing with various conspiracies to interfere with civil rights. Section 1985(3) provides a remedy, generally, if two or more persons conspire or go on the premises of another "for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). Section 1985(3) does not create any substantive rights; rather, it is a mechanism for enforcing federal rights and privileges "defined elsewhere." *Brown v. Phillip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001). The Supreme Court set forth the elements required to state a private cause of action under 42 U.S.C. § 1985(3) in *Griffin v. Breckenridge*:

> [A] complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of (the) conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'

403 U.S. 88, 102-03 (1971). With respect to the second element, a plaintiff must make "a clear showing of invidious, purposeful and intentional discrimination between classes or individuals." *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972). "Mere conclusory allegations of deprivations of constitutional rights . . . are insufficient." *D.R. by L.R. v. Middle Bucks Area Vocations Technical School*, 972 F.2d 1364, 1377 (3d Cir. 1992).

Plaintiffs have not alleged any class or race-based motive which would support a Section 1985(3) claim. Plaintiffs have provided no specific allegations of racial or class-based

18

discrimination, nor any evidence to support such a claim. As Plaintiffs fail to "make a showing sufficient to establish the existence of an element essential to that party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), the Court grants summary judgment for the Defendants on Plaintiffs' claims made pursuant to Section 1985(3).

### C. The City of Camden

Plaintiffs claim that, pursuant to Section 1983, the City was negligent in hiring, training, supervising, and retaining Sergeant James, Sergeant Price, Officer Reese, Officer Baker, Officer Cooper, Officer Pimental, and Officer Badillo. Plaintiffs also claim that the City is liable under *Monell* because a policy or custom of the City caused the violation of their constitutional rights. The Court grants summary judgment for the City on all of Plaintiffs' Section 1983 and *Monell* claims.

A municipality is not liable under Section 1983 solely on a theory of vicarious liability. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).[14] A local government entity may be responsible for constitutional violations of its employees under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury." *Id.* However, if there is no constitutional violation by any individual employee, there cannot be any Section 1983 or *Monell* liability for the municipality. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the

---

[14] The Court also grants summary judgment for the City to the extent that Plaintiffs attempt to hold the City vicariously liable for the actions of any officer.

point."). In this case, the individual officers did not violate the constitutional rights of Decedent, Ms. Lane, or Derrick Lane. The City therefore cannot be held liable pursuant to any of Plaintiffs' Section 1983 or *Monell* claims, and the Court grants summary judgment for the City on those claims.

### D. State Law Claims

The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). No federal law claims remain, and there is no affirmative justification for this Court to retain supplemental jurisdiction. As such, this Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), and Plaintiffs' state law claims are **DISMISSED**.

### E. Fictitious Defendants

Plaintiffs also bring claims against fictitious defendants John Does VII-X, Jane Roes II-X, and ABC Corp. I-X. The Third Circuit allows the use of fictitious defendants "in certain situations until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton County*, 336 Fed.Appx. 248, 250 (3d Cir. 2009). Plaintiffs have conducted reasonable discovery and identified the "true defendants," and those Defendants are entitled to summary judgment. As there are no named parties remaining, the remaining fictitious defendants are **DISMISSED** from this action. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED IN PART**, Plaintiffs' state law claims are **DISMISSED**, and the remaining fictitious defendants are **DISMISSED**.


Dated:   ___09/23/2015_____                          s/ Robert B. Kugler

                                                        ROBERT B. KUGLER

                                                        United States District Judge